DAVIS v. THE BURLINGTON & MISSOURI RIVER R. R. CO.

1. Railroad: STOCK KILLED ON DEPOT GROUNDS : ACT OF 1862. Chapter 169, section 6, Laws of 1862, providing that if a railroad company fails to fence its road against live stock, at all points where it has a

right to fence, it shall be liable for all stock killed, etc., does not extend or apply to depot grounds, and in the absence of negligence, the company are not liable for stock killed thereon.

2. —— The absolute liability of the company under the statute, does not attach at all places where it has the strict or abstract right to fence, but only where, in the particular case, it is fit, proper and suitable that the fence should be built.

*Appeal from Henry District Court.*

WEDNESDAY, APRIL 7.

PLAINTIFF's cow was struck and killed by a locomotive, on defendant's road. The accident occurred in the city of Mount Pleasant (an incorporated city), and on the depot grounds of said company. The passenger depot was located on the corner where Main street, in said city, crosses the grounds of the company, and the cow was killed (say) 100 feet west of said street, while coming from between two piles of lumber on the immediate north side of the track, and attempting to pass into an alley on the south side. This lumber was upon the grounds of the company, but leased to other parties, to be used as a lumber yard. The side tracks, switches, and depot grounds, extended along the track about 1,200 feet, and were not fenced. The killing was between the switches. There was some evidence tending to show negligence upon the part of defendant's servants. Trial to the court, judgment for defendant, and plaintiff appeals.

*T. W. & J. S. Woolson* for the appellant.

*D. Rorer* for the appellee.

WRIGHT, J.—It is insisted that defendant is liable under the evidence because of the *negligence* shown with-

Davis v. Burlington and Missouri River R. R. Co.

**1. RAILROAD: stock killed on depot grounds: act of 1862.** out reference to the question of duty to fence these grounds, and the absolute liability thence resulting under the statute to be hereafter noticed.

It was held, in *Whitbeck* v. *D. & P. R. R. Co.* (21 Iowa, 103), that, whether the right to fence existed or not, the company was bound to use ordinary and reasonable care. And as, under the facts there disclosed, the jury could reasonably infer negligence on the part of the defendant's servants, we refused to interfere with the judgment. Here the court, upon the facts, found for defendant, and applying the same well understood rule, we cannot, upon this ground, disturb the finding. Though the record contains an agreed statement of facts on this subject, it is only stated that a witness would testify to certain matters, such as that the " train was behind time, was moving faster than it usually did at that place," and the like. This leaves the matter too indefinite to justify a reversal on this ground. The case in this respect, as in others, is quite like that of *The L. & I. R. R. Co.* v. *Shriner* (6 Ind. 141).

But the main question in the case relates to defendant's liability, without reference to the question of negligence. These grounds were not fenced. If a company fails to fence its *road* against live stock at all points *where it has a right to fence*, it becomes absolutely liable to the owner of any stock injured, etc., and in such cases it is only necessary to prove the injury complained of, etc. Laws of 1862, ch. 169, § 6. And hence the very point here made is that the statute extends to depot grounds and, indeed, to the entire line of the road. Whether it does, we are now called upon for the first time to determine in this State. It is true the question arose in *Whitbeck* v. *D. & P. R. R. Co.* (*supra*), but was

not decided, as we held that the verdict could be sustained upon the evidence adduced of negligence.

Generally, we may state the liability of the company, in relation to stock killed, as follows: If killed, where there is the right to fence, and none has been erected, the liability is absolute. If there be a fence, gross negligence must be shown on the part of the company. If the killing takes place where there is no right to fence, the company is held to reasonable care and liable for ordinary negligence. Without undertaking to state the rule applicable at greater length, or defining what would or would not be gross or ordinary negligence, or stating the duty of care on the part of the owner of the stock, the foregoing we believe to be a correct condensed statement of the law governing in the several cases supposed. See, on this subject, 21 Iowa, *supra; Balcom* v. *D. & S. R. R. Co.*, id. 102; *Bartlett* v. *D. & S. C. R. R. Co.*, 20 id. 188; *Russell* v. *Hanley*, id. 219, and cases there cited; also 1 Redf. Rail. 493, *et seq.* and notes; Pierce R. R. Law, ch. 15.

If, therefore, the company had, within the meaning of the statute, *a right to fence* these grounds, there is no dispute as to its liability. If it had not, then the judgment below should remain undisturbed, for we have seen there was no such clear proof of negligence as to justify our interference.

The character, extent and nature of these grounds are fully indicated by the statement preceding this opinion. It may be proper to state, in addition, that they are crossed by one other street beside Main, and that the track through the city is intersected by several others.

The depot grounds outside of the track covered quite a large tract, say five to six acres, extending along on either side of the road, and used for loading and unloading freight, and all the purposes incident to a station of such

importance. The lumber upon the yard named, we need hardly say, was brought by the road and taken from the cars while upon the track, being piled often to the very line of the land reserved by the company for track purposes proper.

The liberal language of the act will apply to depot as to other parts of the road. That is to say, the "right to fence," may be as clear in many, and, indeed, most instances, when applied to depot grounds as to any part of the entire line. And, as a rule, we believe in following the language, allowing no departure because of supposed hardships or its apparent unreasonableness. The legislature must be taken to have selected the language here adopted to give expression to its will, and it is not for us to say that something else was meant or intended. In other words, it is not for courts to nullify by construction the plain and explicit requirements of a statute, nor to make exceptions which do violence to its letter and policy. *Bradley* v. *B., N. Y. & E. R. R. Co.*, 34 N. Y. 427.

And yet many of the rules of interpretation would be without place—had as well be blotted out—if the very language used is to be followed in every instance. Than these necessary rules, none is of more constant application than that which teaches that the reason and intention of the lawgiver will control the strict letter of the law when the latter would lead to palpable injustice and contradiction. 1 Kent, 462. And looking at this statute in the light of its reason and intention, we believe that this absolute liability on the part of the company attaches, not at all places where there is the strict or abstract right to fence (and failure to do so following), but that it is the duty of the courts to ascertain whether in the particular case it is fit, proper and suitable that the fence should be built. In other words, if the injury occurred at a place

where to build a fence was improper, the liability is not absolute, but depends on the question of negligence.

The fitness or propriety of fencing roads, we need hardly say, depends upon circumstances. The law was not, in our opinion, we may state generally, intended to apply to depôt grounds, and especially where in a town or city, intersected by streets, or where the switches, as often occurs, run along and upon the streets. The legislature had in mind, beyond question, these lines as they were constructed over our prairies, knowing that cattle were free commoners, and desiring to protect stock running at large so generally in the agricultural districts of the State. Some States compel these companies to fence their roads, as fast as constructed, and forbid the running of trains, until so inclosed. Instead of doing this, we leave them free to fence, or not, providing, however, for absolute liability if stock shall be injured. To make the requirement to fence imperative, it was doubtless thought, would unnecessarily fetter the energies of these companies, at a time when their roads were needed for the more rapid growth of the State. And at the same time stock owners were protected in their rights, when the injury was occasioned by want of a fence. This was a compromise, so to speak, between the imperative rule of some of the older States, affirmatively requiring a fence, and that of the common law which makes cattle trespassers if found on the track, whether fenced or not. The thought, however, was the fencing of the track or road, and not the depôt grounds. The language is, "its road," and we do not believe that this includes depôt grounds. True, these grounds, including switches, side tracks, etc., may be a part of the road. This is not denied for many, and indeed most, purposes. And yet we cannot think that the legislature contemplated these as a part of the "road" by the statute under consideration.

How eminently necessary it is that these grounds should be left open, for the public convenience and in view of the business there transacted, the slightest observation, or indeed the most casual practical thought, will serve to demonstrate. In many instances, as in this, they are approached and intersected by many streets — those in more or less constant use. At other times the track will be laid along a street, and trains are made up there for more than half of the twenty-four hours. The convenience of the public — those having business at the depot — receiving and shipping freight — must be consulted. Wherever a depot, there grows up almost at once a town if none there before, and the road, it is understood from the very nature of things, is to be run and used with reference to such town, its streets, alleys, etc. Those having business with the road may go upon its grounds, at any appropriate point by one street or another, delivering their grain or freight at this car or that, upon one track or another; taking lumber or goods from here or there. Frequently, as before suggested, the side tracks and switches may be in streets where it is impracticable to fence, and yet the *right*, without infringing any public right, may exist. So, immense elevators and warehouses are often constructed for the convenience of trade and the public, within these grounds, which are daily used and approached by trains almost without number. If, in reaching these approaches, in turning and leaving, they are to be confined to fenced lines, it can be at once seen that innumerable would be the drawbacks, inconveniences and embarrassments.

But if fenced, the streets are, of course, to be left open, for no one would say that gates are to be kept to be opened and closed by an army of servants employed for this particular purpose. If open, then the protection to stock would be but slight, for they can pass and repass over the

track, and, possibly, without obstruction along the same, for there is nothing in the law *in terms* requiring *cattle guards at public* crossings. But without discussing or relying on this thought (see *N. A. & S. Co.* v. *Pace*, 13 Ind. 411), the fact remains, that cattle at all these street crossings could pass *over* the track at pleasure. In the country these highways cross the railroad once in two, four or six miles; it may be in towns and cities every two to four hundred feet, and thus if a fence is required in towns and cities, the protection would be but partial, by no means accomplishing the object designed by the statute. Then, too, it is known, that in many cities, by police regulation, most kinds of stock are prohibited from running at large.

This was known when the law was passed, and serves additionally to show how clearly the "road" outside of cities and towns, outside of depots, was in the legislative mind. And thus we might at much greater length, demonstrate the inapplicability of the law to depot grounds, the reason and propriety of confining the language of the statute to the "road," but this will suffice. The mere *inconvenience* to the company, by no means governs in determining whether there exists the right to fence. This has little if any weight. We look rather to the public convenience, the public interest, the spirit and policy of the statute, the mischief to be remedied, as well as the words employed to express the legislative will, and thus guided, we feel well satisfied that plaintiff's case does not come within the statute.

This construction of the statute is well sustained by several adjudged cases. Thus, in *I. & C. R. R. Co.* v. *Kinney* (8 Ind. 402), it was held, under the statute of that State (1853, p. 113), that the company was not liable for stock killed at a place where a fence ought not to be

erected, and that an open space in front of a mill, necessary for the convenience of shipment, was such a place.

That is certainly a stronger case against the company than the one before us. In *L. & I. R. R. Co.* v. *Shriner*, before cited (6 Ind. 141), it is held in substance that the construction which would make the company liable, would require it to make a fence which would become a nuisance and involve the greatest absurdity. And later (*I. & C. C. R. R. Co.* v. *Destel*, 20 id. 231), it was ruled that the company was not bound to fence its track in the immediate vicinity of the engine house, wood-yard, etc. And see, also, *G. & C. R. R. Co.* v. *Griffin* (31 Ill. 303), which relates to the depot grounds, and which is cited, together with that last named from Indiana, without disapproval by Judge Redfield, 1 Rail. 495; *Hurd* v. *R. & B. R. R. Co.*, 25 Verm. 116; Pierce on Rail. 355–6.

The cases sometimes referred to, in 24 Indiana (*I. & C. R. R. Co.* v. *Guard*, 222; *Same* v. *McKinnie*, id. 283), and others discussing a like question, we do not controvert. The fact that a public highway *was alongside* of a railway, instead of showing that a fence should not be maintained, would certainly show a stronger reason for fencing. And this is all that these cases rule. They all recognize the doctrine that the statutory liability would not arise, if the injury occurred at a place where it would be improper to fence.

If there be cases in some of the States apparently in conflict with these views, they will be found, upon examination, to be based largely upon statutes different from ours. And this being so, it seems unnecessary to add to this opinion by citing and commenting upon the same.

Affirmed.