ANDRE v. THE CHICAGO AND NORTH-WESTERN R. R. Co.

1. Railroad: LIABILITY FOR STOCK KILLED AT CROSSINGS. Where the outer line of a railroad and that of a highway, running parallel with each other, intersected several hundred feet before the highway crossed the track of the railroad, it was *held*, that the company were, under chapter 169, Laws of 1862, liable for stock killed on the track between cattle guards which were erected at the points where the right of way of the railroad and the highway intersected and where the highway crossed the track, and to which the company had erected fences. It seems that, in order for the company to protect itself from liability, its fences should be built to, and its cattle guards erected at, the crossing.

2. Practice: ARREST OF JUDGMENT. The objection that the petition in an action against a railroad company contains no averment of the corporate existence of the defendant, comes too late after judgment, and constitutes no ground for motion in arrest.

*Appeal from Linn District Court.*

TUESDAY, DECEMBER 6.

ACTION to recover, under chapter 169, Acts 9th General Assembly, double the value of certain cattle alleged to have been killed by a train of cars upon defendant's road. Verdict and judgment for plaintiff; defendant appeals.

*E. S. Bailey* and *N. M. Hubbard* for the appellant.

No appearance for the appellee.

BECK, J.— I. The evidence tended to show that plaintiff's cattle were killed near a point upon defendant's railroad, 1. RAILROAD: where a highway crossed the same. The railliability for stock killed at road and highway, at the point of inter-crossings. section, formed an acute angle, probably of less than twenty degrees. From the point on the east, where the line bounding the right of way of the railroad

first touched the line of the highway, to the like point of intersection of the lines of the railroad and highway on the west, a very considerable distance intervened, possibly one thousand feet. The railroad was fenced to these points, or nearly thereto, and cattle guards were there constructed. The distance between the cattle guards, as we understand the evidence, was 860 feet, giving that distance at the crossing of the highway without fences, on either side of the railroad. Between these guards, the cattle of plaintiff were killed. Upon this evidence, the defendant requested the court to instruct the jury as follows:

" A railroad company is not bound where it approaches a public highway, to fence its road only so far that the outermost line of its right of way intersects the public highway, and it may then lawfully run its fence up to the track and put in a cattle guard, and that will satisfy the demands of the statute.

Or, in other words, the statute does not require railroad companies, where their track approaches a highway running nearly parallel with it, to fence along the highway till the line of the highway strikes the railroad track, but they may stop where the line of their right of way strikes the line of the highway, and then put in their cattle guards."

This instruction was refused, and constitutes the first ground of error assigned by defendant.

Section 6 of chapter 169 of the Acts 9th General Assembly provides that any railroad company failing to fence its road " against live stock running at large, at all points where said roads have the right to fence, shall be absolutely liable to the owner of any live stock injured, killed or destroyed by reason of the want of such fence or fences as aforesaid, for the value of the property so injured, killed or destroyed, unless the injury complained of is occasioned by the willful act of the owner," etc. It further provides that, in cases of liability under the foregoing provision and

a refusal to pay the value of the property destroyed or injured for thirty days after notice given, the injured party shall be entitled to recover, in a proper action, double damages.

It is argued that, under the foregoing statutory provision, the railroad company is not required to fence its road, except as indicated by the instruction refused by the court. The argument is to this effect: The company has the right to occupy the full breadth of its right of way. But at the point of intersection, its right of way covers the highway; the conclusion is, that the land, at such point, must be occupied in common by the highway and the railroad, and, therefore, the company has no right to fence its full breadth of the right of way, for it would thereby interfere with the highway. The first proposition of the argument, stated as a general rule, may be admitted, but there is an exception to this rule, where the occupancy interferes with the use of the highway. It is evident that the company may occupy less and fence less than the full breadth of the right of way, and it is undoubtedly lawful for them so to do. The spirit of the law, as well as its express terms, requires fences to be made for the protection of the owners of cattle running at large. This protection is not fully given by fences built as contended for by defendant. In this case, about 800 feet of the railroad, which the company had the right to fence, was left exposed to cattle running at large. By fencing along the line of the highway and constructing the cattle guards thereon, the destruction of property possibly would have been avoided, and the safety of travelers upon the trains in a degree increased. We are of the opinion that the instruction was correctly refused.

*Davis* v. *B. & M. R. R. Co*, 26 Iowa, 549, cited by appellant's counsel does not sustain their view. It rules that depot grounds in cities and towns under the provisions of the act above quoted are not required to be

Andre v. The Chicago and North-western R. R. Co.

fenced, and that the railroad companies under the provisions of the act are required to fence only in such cases where it is shown to be fit, proper and suitable. The jury in this case were instructed, that, if they found it was not fit and proper that a fence should be erected at the place where the cattle were killed, the defendant was not liable. The jury must have found that the place where the cattle were killed was a proper and suitable place for a fence. The evidence, in our opinion, sustains such finding.

II. The petition does not describe the defendant as a corporation, and there is no averment therein as to its character. A motion in arrest of judgment is based upon this alleged defect. It may be that this objection would have been sustained upon demurrer (*Byington* v. *M. & M. R. R. Co.*, 11 Iowa, 502), but, after answer, trial and verdict, it cannot be urged. Defects of this character, whereby the substantial rights of the parties are not affected, are not sufficient grounds for the arrest of judgment, or reversal thereof in this court. Revision, §§ 2978 and 2878; *Smith* v. *Milburn*, 17 Iowa, 30.

2. PRACTICE: arrest of judgment.

III. It is insisted that the verdict is contrary to the evidence. There was conflict and disagreement between the witnesses as to some of the facts of the case, but we are unable to say that the verdict is not supported by the evidence.

Affirmed.