CLARY v. THE IOWA MIDLAND RAILWAY CO.

1. **Railroad :** KILLING OF STOCK : LESSEE. Where two railroad companies operate trains on the same track, one being the owner and the other the lessee, each is liable, under chapter 169, Laws of 1862, for stock killed or injured by its own trains.

2. ——.That by the terms of the lease the lessor had the right to fix the time table, and that the lessee's trains were operated in subordination thereto, and that the lessor was obliged to keep up repairs and fences, would not change the rule.

3. —— DOUBLE DAMAGES : PLEADING. In an action against a railroad company for double damages for stock killed, the petition alleged "that defendant had been duly notified of the killing of said cow and pay ment thereof duly demanded," which defendant had refused. *Held,* sufficient to warrant a judgment for double damages, where no objection was made until after judgment.

*Appeal from Jackson Circuit Court.*

TUESDAY, OCTOBER 21.

THIS action is brought to recover of the defendant, a railroad corporation, for killing plaintiff's cow in September, 1871, while operating and running its cars on the track of the Davenport and St. Paul railroad, under a lease from that company, at a place where the defendant and its lessors had a right to fence but had neglected to do so.

The defendant answered, and to the second count thereof the plaintiff demurred, which being sustained and judgment rendered thereon for plaintiff, defendant appeals.

*E. S. Bailey* for the appellant.

*Amos & Fletcher* for the appellee.

MILLER, J. — I. The division of the answer to which the demurrer was sustained is as follows: " The said defendant says that on or about the 13th day of December, 1870, the said defendant made and entered into a written agreement with the Davenport and St. Paul Railroad Company, by which the last-named company agreed to grant to this defendant the right to use and occupy jointly with said Davenport and St. Paul Railroad Company, the railroad of the last-named company from the point of junction of their railway with defendant's railway on section 15, in township 83 north, range 3 east, in Bloomfield township, Clinton county, Iowa, to Maquoketa in Jackson county, a distance of about seven miles, for which said defendant agreed to pay said Davenport and St. Paul Railroad Company the sum of $600 per month as long as they used said railway, and either party thereto had the right to terminate said agreement upon giving six months' notice to the other of their intention so to do. That said Davenport and St. Paul Railroad Company were

to keep and maintain said railroad in good repair, and make all repairs and renewals that might be required to operate the same. That under said agreement said defendant, in or about the month of December, 1870, began to run its trains over said seven miles of railroad, and so continued for about one year, when said agreement was terminated. That during all of said time the Davenport and St. Paul Railroad Company owned said railroad and operated, managed and controled the same, ran its trains thereon, had the exclusive charge and control of making repairs, constructing and maintaining tracks, bridges, fences and cattle guards; that this defendant had no right or authority to build or maintain fences or cattle guards, or make any change, alteration, repairs, renewals of the same or the track thereof; that the only trains run by defendant on said track were run under a time-table made and directed by said Davenport and St. Paul Railroad Company and not otherwise; that the defendant did not at any time run or operate the same in any other manner; that said animal of the plaintiff was killed on that part of the railroad of said Davenport and St. Paul railroad as heretofore described, and while said defendant was running its trains under the agreement aforesaid."

The substance of this count of the answer is, that the killing of the plaintiff's cow is admitted; but defendant claims that because its train killed the cow while running and operating the same on the track of the Davenport and St. Paul railroad, under a lease from said company, by the terms of which the Davenport and St. Paul Railroad Company was required to make and keep up all repairs, etc., and defendant's trains were run under a time-table made and directed by that company, it is not liable.

In *Stephens* v. *The Davenport and St. Paul Railroad Co.*, April term, 1873, which was an action to recover of the defendant for stock killed by the defendant in this case, while running its trains on the railroad track of the Davenport and St. Paul Company, under a lease, it was held that a railroad company, which has constructed a railroad and is actually operating it, is not liable for injuries to stock caused by another

company also using the road. In other words, that the company which causes the injury in the use and operation of the road, by running its trains thereon, is the party liable to respond in damages, notwithstanding the road was constructed and is owned by another company, which is also operating its trains thereon.

This holding would seem to be decisive of this case, but appellants' counsel claims that this is unlike the case of *Stephens* v. *Davenport and St. Paul Railroad Co.* in this, that in that case it was "admitted that the railroad was used and operated by both companies, each having its own time-table, and the right to use and operate the same, and to run any and all trains thereon, and that the lessees had the right, and were required to fence said railroad;" whereas, in this case, it is "admitted that the Davenport and St. Paul Railroad Company owned, operated, managed and controled the road; had the exclusive charge and control of making all renewals and repairs, and of constructing and maintaining fences," etc.

In the case above cited, the fact that the lessee had the right, and was required to fence the road, and run its trains upon its own time-table, did not enter into the decision of the question before the court. The decision was the result of the proper interpretation of section 6, of chapter 169, Laws of 1862, and of section 1, of chapter 79, Laws of 1868. The principle of the decision is, that the particular company causing the injury by the operation of its trains on the road, whether it be the owner or lessee thereof, is the party held liable for such injury. Mr. Justice COLE, in delivering the opinion, says, note carefully the language used : "Any railroad company *hereafter running or operating its road.*" Why limit the liability to those only which run and operate their roads, if they are to be liable for acts or injuries not connected with such running and operating ? But further, they are made liable for the value of the property "*so* injured." How injured ? Certainly it is not "by reason of the want of such fences," for that does not apply to the way or manner of the injury; it is but the occasion. The *cause* of injury, or the

way in which the stock is "*so injured*," is by the running or operating its road. Hence, the defendant is absolutely liable; that is, the law conclusively presumes negligence, making it liable for stock injured, killed or destroyed by running or operating its road unfenced. If the injury was caused by another, it is not liable. It was no purpose of the statute to make it liable in such case. But the statute has made that other equally and absolutely liable for the injuries it may cause.

It is insisted, however, by appellant's counsel, that defendant " had no right to fence; the owners had reserved the right to do so." The presumption of negligence, created by the statute, so as to impose an absolute liability for stock injured by a railroad company, or a lessee thereof, attaches to the company or person whose train does the injury, at any point where the road is not fenced, and where it is lawful to fence it. Sec. 6, chap. 169, Laws of 1862. It is lawful, and railroad companies have the right, to fence their roads, and their absolute liability attaches for stock killed or injured at any point on the line of their road where the same is not fenced, except at crossings of streets and highways, and on depot grounds. *Davis* v. *Burlington & Mo. River R. Co.*, 26 Iowa, 549; *Rogers* v. *Ch. & N. W. Ry. Co.*, id. 558; *Durand* v. *The Same*, id. 559; *Hinman* v. *The Ch. R. I. & P. R. Co.*, 28 id. 491; *Swift* v. *The North Mo. R. Co.*, 29 id. 243; *Spence* v. *The C. & N. W. Ry. Co.*, 25 id. 139; *Stewart* v. *The Same*, 28 id. 282; *Andre* v. *The Same*, 30 id. 201.

Section 1 of chapter 79, Laws of 1868, imposes the same liabilty upon the lessee of a railroad for killing or injuring stock, by the running of its trains thereon, as is imposed by chapter 169, Laws of 1862, upon railroad companies who own and operate their roads. *Stephens* v. *Dav. & St. Paul R. Co.*, *supra*. The obligation to fence the road rests upon the lessee, by the statute, as much as upon the lessor, and if the former runs and operates the road without having it fenced at all points where it is lawful to fence it, the same absolute liability attaches to the lessee as to a company owning and operating

the road. The killing or injuring of stock on the road where it is lawful to fence, is conclusive evidence of negligence, and the company or person running and operating the road is, in such case, absolutely liable for the stock killed or injured by its trains. *Stephens* v. *The D. & St. Paul R. Co., supra;* *Hinman* v. *Ch. R. I. & P. R. Co., supra.* This liability is created by the statute, and it cannot be removed or taken away by a contract voluntarily made between the owner and the lessee of the railroad. In other words, the defendant running and operating its cars under a lease is absolutely liable to the same extent for stock killed or injured by its trains at points on the road where it was lawful to fence and where no fences have been erected, as if it owned the road, and it cannot relieve itself of this liability by a private contract with the lessor of the road. If this could be done it would be quite an easy matter to defeat the purpose and operation of the statute on this subject. The lessor of the road could not be held liable unless the injury was caused by its trains, and if the lessee could remove its liability by an agreement that it should not be required to fence the road, the owner of the stock killed or injured would have no redress whatever. The defendant cannot by its own act thus escape the liability which the law imposes.

II. Again, it is urged that the fact that the time-table was made by the Davenport and St. Paul Company, and that defendant's trains were run and operated in subordination thereto, therefore, the Davenport and St. Paul Company was operating the road in part by means of defendant's trains. The division of the answer demurred to clearly shows that the train which caused the injury belonged to, and was being run and operated by defendant on a portion of the track of the leased road. There is no averment to the effect that the Davenport and St. Paul Railroad Company had any interest in the running of the trains of its lessee, or that it had any control over them. The mere fact that the defendant run and operated its trains in conformity with a time-table made by its lessor who was also running its trains on the same road, does not in any sense

make the defendant's acts in running its trains on the leased road the acts of the lessor. The right to make the time-table, reserved by the Davenport and St. Paul Company, was obviously for the purpose of preventing collisions of the defendant's trains with its own, but this proper precaution could not make it liable for injuries caused by the defendant's trains.

III. It is insisted by appellant's counsel that the court erred in rendering judgment for double the value of the cow, because "there is no allegation of thirty days' notice in writing given, accompanied with an affidavit of the destruction of the property."

3. —— double damages.

The allegations of the petition in this respect are, "that defendant has been duly notified of the killing of said cow, and payment thereof duly demanded, and that said defendant has neglected and refused to pay for said cow."

It may be conceded that these allegations are not sufficiently specific; that they would have been so held on a motion for a more specific statement in respect to the notice, etc., but no such motion was made, and this general form of statement is not ground of demurrer.

If defendant had made a motion for a more specific statement and the same had been overruled, it would have waived the objections made thereby by answering. *Rea* v. *Flathers*, 31 Iowa, 545; *Benedict* v. *Hunt*, 32 id. 27. The waiver is at least as clear when it has failed entirely to make the motion or raise any objection until after answering the petition.

The allegation is that the defendant was duly notified. In this statement it is implied that such notice, and for such a length of time as the law requires, had been given to the defendant. As before remarked, this statement may be conceded to be faulty if objected to in proper time and manner, but it is too late to do so for the first time after judgment on a demurrer to the answer.

Affirmed.