## MUNDHENK v. THE C. I. R. Co.

1. **Railroads:** INJURY TO STOCK: DUTY TO CONSTRUCT CATTLE GUARDS. The statute, providing that every corporation operating a railway shall make proper cattle guards, where the same enters and leaves any fenced land, is imperative. The company has the right to fence at all places, except where the public convenience excludes that right, as at depot grounds; and under the facts of this case the question, whether the injury was done at a place where it was fit, proper and suitable for the defendant to fence, was properly excluded from the jury.

2. ——: INSTRUCTION: EVIDENCE. An instruction, asked by the defendant and based upon evidence not found in the record, was properly refused.

3. ——: ——: LIABILITY FOR: ADMISSION OF: EVIDENCE. In an action to recover for injury to stock by a railroad train, evidence that defendant's road-master agreed upon an arbitration is not competent to show the liability of the company. An offer to arbitrate is not an admission of liability, nor would any admission by the road-master, at another time and place, be deemed the admission of the company.

4. ——: ——: INSTRUCTION. The giving of an instruction based upon a theory wholly unsupported by the evidence, was misleading, and prejudicial error.

5. ——: ——: DOUBLE DAMAGES: AFFIDAVIT FOR: AMENDMENT: SERVICE. The affidavit, served for the purpose of entitling claimant to double damages for stock killed by a railroad train, need not specifically designate the place where the injury was done. The jurat to such affidavit may be amended within such reasonable time as not to cause essential injury to the other party, and the notice of claim and the accompanying affidavit may be served by the plaintiff or any other person.

*Appeal from Marshall District Court.*

FRIDAY, MARCH 24.

ACTION to recover double damages for injury to two horses done by one of the defendant's trains; also to recover the amount of a veterinary surgeon's bill paid for doctoring one of the horses. There was a trial by jury, and verdict and judgment were rendered for the plaintiff. The defendant appeals.

*Boardman & Daly*, for appellant.

*J. M. Parker*, for appellee.

ADAMS, J.—I. The railroad runs north and south. The horses were struck either where the railroad crosses a highway, run-

**1. RAILROADS: injury to stock: duty to construct cattle guards.** ning east and west, or a few feet north of the highway. The train which struck them was going north. The plaintiff claims that they were struck north of the highway, and where the defendant had a right to fence. The defendant claims that they were struck in the highway. The defendant also claims that if they were struck north of the highway they were struck where it is not fit, proper, or suitable to fence, and therefore where it had no right to fence.

There was some evidence tending to show that they were struck north of the highway, and the question as to whether they were or not is not reviewable by us.

The question as to whether, if they were struck north of the highway, they were struck at a point where it was fit, proper, and suitable for the defendant to fence, the defendant claims was a question of fact, which should have been submitted to the jury. The defendant propounded a special question upon this point, and asked that it be submitted to the jury; but the court refused to submit it. This refusal is assigned as error.

In respect to the character of the place the facts are undisputed. The land north of the highway was fenced, but no cattle guard was constructed where the railroad enters the land after leaving the highway. The defendant's design was that a certain railroad bridge, which commenced fifty-two feet north of the highway and extended forty-eight feet, should serve as a cattle guard. Fences were constructed on each side of the railroad from the bridge to the highway where the fences connected with the highway fence. These fences in connection with the bridge formed a pocket. The embankment of the

railroad at the bridge was ten feet high with precipitous sides. The company omitted to put in a cattle guard at the highway because its officers thought that a cattle guard at the highway, so near the bridge, approached as it was upon such an embankment, would imperil the safety of trains. They claim that such would have been the effect, and hence that they were not required to put in a cattle guard at the highway, and could not properly have done so, and could not properly have fenced that part of their road between the highway and the bridge.

Whether the safety of trains would not have been promoted rather than impaired by a cattle guard at the highway is a question which to our mind admits of great doubt. Possibly the jury might have found for the company upon this point. But the refusal of the court to direct the jury to make a finding upon it was not in our opinion error. The statute is imperative. It provides that every "corporation constructing or operating a railway shall make proper cattle guards where the same enters or leaves any improved or fenced land." If an exception ought to be engrafted upon the statute it is the province of the legislature, and not the court, to do it.

The defendant contends, however, that the court has already made a ruling which would justify us in holding that the defendant was not bound to put in a cattle guard if it was not fit, proper, and suitable to do it. The case relied upon is *Davis v. B. & M. R. Railroad Co.*, 26 Iowa, 550. In that case it was held, in substance, that a railroad company has not a right to fence, within the meaning of the statute, except where it is fit, proper, and suitable to fence, and hence that it has not a right to fence depot grounds. But the question there decided is not analogous to the one before us. There is no statute requiring a railroad company to fence anywhere. It has, in the nature of the case, a right to fence except where the public convenience must be held to exclude the right, and in the case cited it was thought that the public convenience must be held to exclude the right to fence depot grounds.

II.  The defendant assigns error upon the refusal to give an instruction which is in these words: "4.  If the plaintiff's

2. ——: ——: stock was injured in the so-called pocket or curve
instruction:
evidence.  of the fence towards the bridge, yet, if the point where they were first struck was within the limits of a traveled highway of ordinary width—a *de facto* highway—then the defendant would not be liable."

It was contended by the defendant that the evidence showed that the public travel had deviated a little to the north, and had spread over ground not enclosed in the legally established highway.

To this we have to say that we find no such evidence.

III.  The plaintiff was allowed to show, against the defendant's objection, the acts and declarations of one John Sherman,

3. ——: ——: the defendant's road-master.  It was made to ap-
liability for:
admission of: pear that he agreed with the plaintiff upon an ar
evidence.  bitration, and selected an arbitrator, while the plaintiff selected an arbitrator.

The evidence of Sherman's acts and declarations was, we think, inadmissible, and not without prejudice.  It was manifestly introduced as evidence tending to show that the defendant deemed itself liable.  But an offer to arbitrate is not an admission of liability.   Besides Sherman's admission, if he had made any, could not be deemed the admission of the company.  " The representations, declarations, and admissions of the agent of a corporation, stand upon the same footing with those of the agent of an individual."  Angell & Ames on Corp., Sec. 309, and cases cited.  Sherman, as appears, was not only not connected with the train which caused the accident, but what he said and did about it was at an entirely different time and place.  The tort of a principal cannot be proved by evidence of the statements of an agent of such a character.  *Mich. Cen. R. R. Co. v. Carrow*, 73 Ill., 348; *Frost v. Second Ave. R. R. Co.*, 72 N. Y., 542; *Verry v. B., C. R. & M. R. R. Co.*, 47 Iowa, 549.

Whether, if the liability of the company had been conceded, and Sherman had been authorized to settle for the injury, his admission as to the amount of damages sustained could have been shown as admissions of the company, we do not determine, as such question is not before us.

IV. There was evidence showing that one Bennett employed a veterinary surgeon to doctor one of the horses, and paid him for it. Afterwards the plaintiff paid

4. ——: ——:
instruction.

Bennett. It does not appear that Bennett as the agent of plaintiff, actual or assumed, employed the surgeon. The court instructed the jury that the plaintiff could not recover the amount paid unless he bought the account and took an assignment of it verbally or in writing.

There is no pretense that the plaintiff bought the account, or took an assignment of it. The instruction was based upon a theory wholly unsupported by the evidence. It was, therefore, calculated to mislead. And in giving it we think that the court erred.

V. The affidavit, served for the purpose of entitling the plaintiff to double damages, did not designate the place of the

5. ——: ——:
double dama-
ges: affidavit
for: amend-
ment: ser-
vice.

injury, otherwise than by showing that it was in Marshall county. The defendant objected to the affidavit upon the ground that it should have shown the place of the injury more specifically, but the court overruled the objection.

In this, we think, there was no error. It was said in *Mackie v. Railroad Co.*, 54 Iowa, 540, it is not essential that the affidavit served should contain anything more than a statement of the claim and the fact of the injury.

VI. The jurat to the affidavit served was in these words: "Sworn to before me and in my presence by H. W. Mundhenk, this 19th day of August, 1879.

JOHN CARNEY, *Notary Public.*"

Objection was made to the affidavit on the ground that the jurat was insufficient. The objection being sustained, the

plaintiff procured from the notary an amended jurat, and the affidavit with the amended jurat was then, against the defendant's objection, admitted.

The amended jurat is in these words:

" STATE OF IOWA,  }
    Marshall County. }

" Subscribed in my presence and sworn to before me by H. W. Mundhenk, on the 19th day of August, 1879.   In testimony whereof I have hereto set my hand and notarial seal.

JOHN CARNEY,
*Notary Public in and for Marshall County.*"

An affidavit may be amended if done within such reasonable time as not to cause essential injury to the other party.   Code, § 248.   The defendant in this case claims that if the amendment is allowed it will cause essential injury, because the defendant should have thirty days after the service of a proper affidavit to relieve itself from liability by paying single damages.

It appears to us, however, very clear that there was at least a *bona fide* attempt on the part of the plaintiff to bring himself within the provisions of the statute in respect to double damages, and we have no doubt the defendant understood that such was his design.   We think, then, that in view of the statute allowing amendments, which we must presume was known to the defendant, we could not properly hold that the defendant was justified in disregarding the affidavit.   In *Hallett v. Railroad Co.*, 22 Iowa, 259, an action like the present, to re-recover double damages, it was held that it was not error to allow the jurat to the affidavit to be amended.

VII.   The notice of claim and accompanying affidavit were served by the plaintiff.   The defendant insists that such service is without authority and void.

The statute does not provide how the service shall be made. In the absence of any provision, we think, it may be made by any person.

Some other errors are assigned, but the questions presented will not probably arise upon another trial.

For the errors pointed out the judgment must be

REVERSED.