DON SMITH, Appellee, v. JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY, Appellant.

No. 45809.

MAY 5, 1942.

Ross, Everest, Geiser & Johnson, for appellant.

J. Leo Connolly and H. C. Churchman, for appellee.

MILLER, J.—Plaintiff's petition, as amended, asserts that on September 17, 1931, defendant issued to him a policy of life insurance for $2,000, which included benefits for total disability; plaintiff became totally disabled, made proof thereof in May 1939, electing to accept two annual installments of $1,017.20

each; the defendant paid the first installment of $1,017.20 on August 1, 1939, but refuses to pay the second one; the disability resulted from an injury to his back suffered on September 22, 1938, while in the employ of the Quaker Petroleum Company at Omaha, Nebraska, plaintiff being engaged in unloading a barrel of white lead when his feet slipped and he twisted his back, suffering traumatism to the lumbosacral soft tissues, with abnormal angulation on the top of the sacrum and a spondylolisthesis of the fifth lumbar vertebra, muscles and tendons were torn, bones of pelvis and back injured, arthritis is present and continuous, severe pain; defendant made a thorough investigation of his injury and disability and entered into an agreement for settlement. Plaintiff prayed for judgment for $1,017.20, with interest and costs.

Defendant's answer is in three counts. Count I admits the issuance of the policy and the filing of proofs of disability in May 1939, but asserts that no proofs were filed of the loss now claimed and, accordingly, plaintiff is barred from maintaining this action. Count II asserts that the $1,017.20 was paid to plaintiff in reliance upon statements of plaintiff that have been found to be untrue, under a mistake of fact; defendant denies that plaintiff is or has been totally disabled as provided by the policy, and asserts that, had it known the true facts, it would have paid nothing; defendant denies all allegations of the petition not admitted. Count III asserts that in September 1938, in workmen's compensation proceedings in Nebraska, plaintiff herein was plaintiff therein and alleged under oath that he suffered some temporary disability and 15 per cent permanent partial disability to his back and made no claim of total permanent disability on account of the injury and disability now made the basis for this action; on May 8, 1939, the district court of Douglas county, Nebraska, entered a judgment adjudicating that plaintiff's disability was 15 per cent permanent partial disability; that plaintiff is estopped from now claiming that he is under any permanent total and continuous disability. Defendant also filed a counterclaim for the $1,017.20 previously paid by it, but, at the trial herein, withdrew said counterclaim.

Plaintiff's reply asserts that defendant waived the furnishing of additional proofs and is estopped by its conduct from

claiming lack of sufficient notice and proof of loss; that the proceedings under the Nebraska Workmen's Compensation Law constituted a compromise settlement between plaintiff and his employer, Quaker Petroleum Company, and its insurer, made by plaintiff on advice of his attorneys, prompted by stress of circumstances, and preceded the filing of claim against defendant herein and the settlement agreement made between the parties herein.

Trial was had to a jury. The insurance policy herein is a part of coverage afforded by a group policy to employees of the Quaker Petroleum Company. The disability benefits are payable on proof that plaintiff "has become wholly disabled by bodily injuries or disease, and will be permanently, continuously and wholly prevented thereby for life from engaging in any occupation or employment for wage or profit * * *." In such event the company will "pay in full settlement of all obligations to him under this policy the amount of insurance in force hereunder upon his life * * * in a fixed number of installments chosen by the insured from the table in the paragraph entitled 'Modes of Settlement * * *.'" Proof was made to the company and the plaintiff elected to receive the face of his policy in two annual installments of $1,000 each. Interest amounting to $34.40 accrued thereto, so that the two annual payments were fixed at $1,017.20 each.

The first payment was made. On October 5, 1939, in answer to an inquiry, defendant's agent wrote plaintiff:

"Our records show that you chose two annual payments. The first payment of $1,017.20 was paid when the disability claim was approved and the next one will be due one year from the date disability was established or May 26, 1940. A check will be sent a few days prior to that time and will be immediately forwarded to you. Should you wish any further information regarding this claim, please let us know."

On May 22, 1940, defendant's manager wrote to plaintiff a letter as follows:

"From recent information and evidence obtained, it does not appear that you are now totally and permanently disabled within the terms of the disability benefit provision of the above

numbered policy, nor that you were at any time so disabled. Therefore, the Company's previous recognition of your claim for such disability benefit was due to a mistake of fact, and you are not entitled to receive a payment which would become due May 26th, 1940 provided that you were disabled within the terms of the policy.''

█ Plaintiff testified in detail regarding the circumstances of the injury to his back. He was handling a barrel weighing about 650 pounds. It got away from him. His feet slipped out from under him, he "slid straddle of the barrel" on his back, lay on the floor a second or two, had severe pains just below the belt in the back, went back to work for three days, did not do much, on the fourth day he stayed in bed with severe pain. He testified:

''It was most just below the belt in my back. I experienced that pain when I lifted anything. It was a sharp pain, sharper at times, than at others and is just below the belt in the back. I have not done any work * * * since that date. * * * I have experienced pain during all of the time since. * * * When I walk a block or two I experience terrible pains just below the belt in the back. Since the date of the accident I have lifted objects of ten or fifteen pounds in weight—picked it up in both hands—but have not carried it any distance. When I lift an object of ten or fifteen pounds I experience severe pains in my back just below the belt. When I stoop down I have severe pains just below the belt in the back.''

Dr. F. J. Schwertley examined plaintiff and testified on his behalf. He was complaining of pain in his back. The doctor found ''a tension, a rigidness or spasticity, or you might call it a hardness in the lower back muscles.'' X-rays were taken. From his interpretation of them, the doctor testified:

''My opinion is that the trouble is spondylolisthesis of that fifth lumbar which means that it is slipping very slightly forward from the bone or from the slope of the top of the sacrum in this region trying to get out of the way and has drawn the ligamentous structure that holds it to the sacrum below and the fourth lumbar body above and the only thing that is holding it there now is two little curved pieces of bone about the size of a finger nail and I think that is accounting for his symptoms.

The effect that it would have on a person would be to give pain and I think it would affect his ability to work. * * * He would have pain if he tries to work. In fact he has pain sitting down and getting up and getting on the examination table any time, the five or six times I have examined him. * * * From my examination of Don Smith and my experience in similar cases, I would say that while Don Smith is in a sitting position he might experience pain as a result of the injury to his back. * * * I would say it is going to be a permanent condition based on observation of over two years, and I don't think he has made any improvement.''

Dr. Purl E. Reed also testified for plaintiff. He testified:

''The man was complaining of a stiffness, soreness and pain in the lower back in the lumbar region and in the physical examination he gave the past history of an injury. * * * The man had some objective symptoms of pain. There was a general stiffness, no evidence of any swelling through the back, but a general feeling of tension throughout the muscles of the lumbar area. * * * I believe his back distress is due to the injury. From my examination of the X-ray I find evidence of arthritis in that picture. * * * From my knowledge and my experience with injuries and traumatisms of the back I don't feel that this man can continue to do the type of work he did previous to the injury. * * * Throughout the lumbar region there is evidence of osteoarthritis, that is all I can see.''

Dr. M. C. Hennessy, testifying for the defendant, reviewed his findings regarding plaintiff's condition and testified:

''I do have an opinion, yes, sir. * * * That he is not totally and permanently disabled for life. * * * My opinion is that he could be engaged in a gainful occupation.''

Dr. R. W. Fouts testified for defendant, among other things, as follows:

''If a condition of spondylolisthesis existed, I believe it could be detected by Exhibit C but I find no such evidence of it. I find very slight evidence of other pathology on Exhibit C. There is evidence of slight arthritis, very mild arthritis, involved in the first and second vertebrae.''

There was other evidence, of course. The foregoing review is illustrative. Defendant moved the court to take certain issues from the jury and made a motion for directed verdict. The motions were overruled. The jury returned a verdict for plaintiff in the sum of $1,017.20. Judgment was entered accordingly. Exceptions to the instructions and motion for new trial were overruled. Defendant appeals to this court.

 I. Defendant's first assignment of error complains of the overruling of defendant's motion to withdraw from the jury "any issue as to the twisting or spraining of the muscles and tendons of the back of the plaintiff," and "any evidence of pelvic or sacroiliac * * * injury or disease" because there is no evidence to support a finding of such injury or that plaintiff is suffering such injury. Complaint is also made regarding the court's statement of plaintiff's contentions in this regard, to wit:

"That on the 22nd day of September, 1938, while handling a barrel he received an injury whereby the muscles and tendons of his back were torn and strained, and his pelvic and sacroiliac bones, and all of his lumbar vertebrae were wrenched, dislocated and strained, causing him pain in the spine and back in the area of his hips. That arthritis is present in said area. That from and since September 22nd, 1938, the plaintiff has continuously experienced pain. That his disabilities are permanent."

We find no merit in the contentions.

Defendant relies upon the cases of Veith v. Cassidy, 201 Iowa 376, 207 N. W. 328; Disalvo v. Chicago, R. I. & P. R. Co., 199 Iowa 868, 200 N. W. 729, 202 N. W. 608; Mundhenk v. C. I. R. Co., 57 Iowa 718, 11 N. W. 656. The cases do not require a reversal herein. In Veith v. Cassidy, supra, the court had submitted one count of the petition which had no evidence to support it, and was criticized for copying the petition in full into the instructions. In the Disalvo case, supra, this court condemned the practice of copying an involved petition into the instructions where many allegations had no evidence to support them. In the Mundhenk case, supra, there was submitted to the jury a theory that was wholly unsupported by the evidence. The cases are not analogous to that before us.

■ The statement of issues here challenged is a concise statement of the substance of several paragraphs of the petition and its amendments which fill several pages of the abstract. While the doctors do not describe the injury in the exact words which the court used, there was evidence to warrant the summary which the court made of the allegations of the petition as amended.

■ II. Defendant's second assignment of error complains of the overruling of paragraph 6 of its motion for a directed verdict which asserted that there was no competent evidence of total disability, the only competent evidence being that "there is a 15% disability now existing." The theory' is that the judgment of the Nebraska court and the statements of plaintiff under oath, submitted to secure such judgment, are controlling. We refuse to so hold.

Defendant relies upon Kramer v. Kramer, 68 Iowa 567, 27 N. W. 757; District Township v. Independent District, 69 Iowa 88, 28 N. W. 449; Meirkord v. Helming, 139 Iowa 437, 116 N. W. 785. The cases are not in point.

In the case of Kramer v. Kramer, supra, the action was in equity, triable de novo in this court. We refused to give credence to testimony of a witness that was contrary to a prior sworn statement. But here the credibility of the witness was for the jury to determine. We cannot usurp that function.

In the case of District Township v. Independent District, supra, at page 91 of 69 Iowa, page 451 of 28 N. W., we state:

"The defendants having gained protection in an action on the ground of the validity of the judgment, and that it was an adjudication against them, are forever estopped to claim the contrary in an action between the same parties."

No such question is presented here. The parties to the proceedings in Nebraska were not the same as those now before us. Had the Nebraska court determined that plaintiff was totally disabled under the Nebraska Workmen's Compensation Law, that would not have adjudicated any rights against defendant under its policy. The reason is that the parties are different and the issues are not the same. Plaintiff's affidavit and the judgment he secured through it were properly presented for

consideration by the jury as admissions against interest, but were not conclusive upon the parties herein.

In Meirkord v. Helming, supra, appellant was the trustee of the bankrupt estate of John Helming and intervened in a partition action to establish an interest in the land. At page 438 of 139 Iowa, page 785 of 116 N. W., we state:

"* * * there is but one question for determination, and that is whether the appellees have personal judgments against John Helming." And again at page 439, we state: "Furthermore, the appellant expressly admitted in his intervention in the injunction suit the recovery of the judgments against John Helming. He should not now be heard to the contrary."

This court in a trial de novo had broad powers in deciding that case, which we cannot undertake to exercise in this action at law.

III. The other assignments of error, while stated quite fully and elaborately, in effect challenge the sufficiency of the evidence to sustain a finding by the jury that plaintiff was totally disabled within the contemplation of the provisions of defendant's policy. We think that there was a question for the jury to decide herein.

Defendant challenges the sufficiency of the evidence on proximate cause. Dr. Reed testified: "I believe his back distress is due to the injury." This, with the other evidence in the record, was sufficient. It is next contended that the question of total disability was a medical question, that defendant's doctor testified positively that plaintiff was not totally disabled, and the testimony of plaintiff's doctors did not go far enough to overcome such testimony. Dr. Schwertley testified that, "it is going to be a permanent condition." But defendant contends that Dr. Schwertley's testimony is refuted by that of Dr. Reed and should be ignored. It is true that there is a conflict in their testimony, but we think that the jury was privileged to decide the conflict, that Dr. Schwertley's testimony was substantial, more than a mere scintilla, and that, on the record as a whole, the verdict has support in the record.

The judgment is affirmed.—Affirmed.

All Justices concur.